William Stephen **ALLEN** and Jane E. Allen, his wife, Appellees,

v.

**UNITED STATES** of America, Appellant.

No. 74-2506.

United States Court of Appeals, Ninth Circuit.

June 8, 1976.

As Amended Aug. 20 and Sept. 20, 1976.

George G. Wolf, Atty. (argued), Dept. of Justice, Washington, D. C., for appellant.

Sandra J. Shapiro (argued), of Bancroft, Avery & McAlister, San Francisco, Cal., for appellees.

Before GOODWIN and WALLACE, Circuit Judges, and WILLIAMS,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

The district court granted a refund after finding the taxpayers entitled to a charitable deduction under Internal Revenue Code of 1954 § 170(c)(1) for the market value of 9.2 acres of redwoods deeded to the City of Mill Valley, California. The government appeals.

In 1963, taxpayers bought for investment purposes 22 acres of land zoned for one-acre residential lots. Mill Valley had an ordinance allowing "cluster zoning" that would permit a subdivider to divide a tract into half-acre lots, notwithstanding the one-acre-lot-size rule, provided that equivalent land was preserved as open space.

The topography, location of the wooded areas, and aesthetic conditions in the 22 acres commended to the taxpayers a plan of development which would preserve the red-woods intact. Between 1965 and 1967, the taxpayers applied three times to the city for approval of subdivision plans. Each plan created a redwood park, with the balance of the land in streets and half-acre lots. The first two plans were withdrawn by the taxpayers. One of these had not been passed upon by the city. The city approved the second plan, but the taxpayers withdrew it for financial reasons. The third plan showed more half-acre lots than the second, and reduced the park acreage. The third plan was approved by the city on the condition that the 9.2 acres of redwoods shown on the plan be deeded to the city. The city adopted a resolution to that effect.

Upon the adoption of the resolution, taxpayers executed and delivered the required deeds to the city. On their 1967, 1968, and 1969 federal income tax returns, taxpayers reported the land transfer as a charitable contribution and took a deduction. The Commissioner disallowed each deduction, and this litigation followed.

This circuit has held that the term "contribution", for the purposes of the § 170 charitable contribution deduction, has the same meaning as the term "gift" in § 102(a), as defined by the Supreme Court in Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). DeJong v. Commissioner, 309 F.2d 373 (9th Cir. 1962).

The Court in Duberstein stated that what controls is the intention with which the payment, however voluntary, has been made. 363 U.S. at 286, 80 S.Ct. 1190. A gift, according to Duberstein, must proceed from a detached and disinterested generosity. 363 U.S. at 285, 80 S.Ct. 1190. The broad sweep of the Duberstein language was properly questioned in United States v. Transamerica Corp., 392 F.2d 522 (9th Cir. 1968). Transamerica's subsidiary had conveyed to the city private land which had been used as a public thoroughfare, on the agreement that the city would stop "badg-

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

ering" the donor and would improve and maintain it as a public street. We affirmed the district court's rejection of the deduction because the donor received economic benefit from the transfer: a *quid pro quo.*

■■ Two years after *Transamerica,* this circuit decided *Stubbs v. United States,* 428 F.2d 885 (9th Cir. 1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971). We said that it is the dominant purpose of a transaction that is the determining factor; the expectation of a benefit need not be the sole purpose of a transaction in order to preclude treatment as a charitable deduction. We affirmed a trial court in its instructions that the existence of a *quid pro quo* could be considered by the jury as evidence that the dominant purpose behind the taxpayer's transfer was the expectation of economic benefit. *Stubbs* teaches that motive and purpose are questions of fact.

The court below held for taxpayers by finding:

"Plaintiffs did not anticipate receiving, and did not receive, any benefit, economic or otherwise, in exchange for or as consideration for, their gift of the subject property to the city. Plaintiffs incurred substantial detriment as a result of their gift by virtue of the increased costs of developing the remaining land and the lower prospective market value of one-half acre lots versus one acre lots. It would have been more beneficial and profitable to plaintiffs if they had not contributed the subject property to the city and had developed their entire parcel of property as a one acre subdivision as permitted by the applicable zoning ordinances." Finding No. 13.

■ We approach the quoted finding with the deference dictated by the "clearly erroneous" standard of review. Fed.R. Civ.P. 52(a). *Collman v. Commissioner,* 511 F.2d 1263, 1267 (9th Cir. 1975). A finding is clearly erroneous, even though there is evidence to support it, if the appeals court is left with the firm conviction that a mistake has been committed. *United States v.*

*United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■■ We cannot assert with conviction that a mistake has been made. True, as the government argues, there is an element of *quid pro quo* in the city's approval of a desired cluster-zoning plan upon the dedication of the nine acres of redwoods. But the trial court found that the dominant motive of the landowners was to preserve the redwoods, and that the best way to do so was to give the land to the city. Circumstantial evidence tended to persuade the trier both ways. We are not at liberty to substitute our view of the subjective meaning of this evidence for that of the trier unless we can say that the trier's view was clearly erroneous. We cannot.

In *Collman, supra,* as here, there were elements of self-interest in the conveyance of land to the county for the widening of a street, but we held that the donative intent was dominant. In the case at bar, the trier found that the donative intent was dominant, and the record permits that finding.

■ The government's brief tenders a second issue which we do not reach. The trial court entered a "finding" that the taxpayer's basis in the property from which the gift to the city was carved was $85,000. The government now fears that this finding, which was not necessary to the judgment, will set up some sort of collateral estoppel that will have tax consequences with reference to future sales of lots.

The finding was neither mentioned in the judgment below, nor necessarily included within it, and we have no reason to believe that the trial court ever treated the issue as a part of the case. The question of the basis of the taxpayers' property deserves full and complete consideration and a decision by the trial court before we express an opinion on the question.

The judgment of the district court is vacated, and the cause is remanded for further proceedings, consistent with the views expressed herein, on the issue of the taxpayers' adjusted basis.

Vacated and remanded.

DAVID W. WILLIAMS, District Judge (dissenting):

I respectfully dissent.

Far from being the subject of Allen's great beneficence, the transfer of the 9.2 acres was actually a demonstration of his cunning. The benefits Allen derived from conveying the land to the City are obvious. First, he preserved the stand of trees which he cherished and which made his new development more attractive to prospective plot purchasers. Second, it took the land off the tax rolls. Third, it alleviated opposition to his project which came from local density-conscious citizens who blocked his first map. Finally it moved the city council to approve his new map and allow rezoning. The council's insistence upon referring to the transfer of the acreage in its rezoning resolution (Exhibit D) shows a clear quid pro quo.

Allen sought to develop his 22 acre parcel with a clustered residential pattern of ½ acre plots. No rezoning would be necessary if he sold his land in one-acre lots, but to make the venture more profitable, he sought city permission to get the larger number of lots from his holdings. His first subdivision map was withdrawn because of local opposition; his second map was approved, but he withdrew it in favor of a third map which would give him even more lots to sell. The third map would give plaintiff 20 lots bounded in part by a 9.2 acre park parcel which he deeded to the city of Mill Valley on the same day his map was finally approved. He now claims a $73,000 charitable deduction on his tax return for what he contends is a voluntary gift from him to the city. (26 U.S.C. § 170).

The standard for determining whether a donation qualifies for a gift deduction is set forth in *C. I. R. v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) and followed by this circuit in *DeJong v. C. I. R.,* 309 F.2d 373 (9th Cir. 1962).

> The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and disinterested generosity" or "out of affection, admiration, charity or like impulses" and must be included if the claimed gift proceeds pri-

marily from "the constraining force of any moral or legal duty" or from *"the incentive of anticipated benefit of an economic nature."* (Emphasis mine) *DeJong* at p. 379.

The case at bar seems governed by the holding in *Stubbs v. U. S.,* 428 F.2d 885 (9th Cir. 1970) which found that the taxpayer's dedication of land to the use of a road " . . . was in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." Anyone remotely familiar with municipal politics knows that a gift of part of the land sought to be rezoned is of utmost persuasion to the zoning authority.

Allen's contention that he gave the 9.2 acres to Mill Valley solely to assure that the stand of trees on the land would be preserved and thus lend a park-like environment to the homes he would develop on the remaining land is hard to believe. He could have gained this assurance by retaining the title in his name and saving the trees, but this would have resulted in his getting a tax bill each year on the plot. He wanted so desperately to squeeze out four more lots than the second map would give him that he reduced the size of the "gift" park and got the third map approved by an agreement which resulted in a City Council Resolution (Exhibit D) which conditioned zone approval upon the contemporaneous conveyance by plaintiff to the city of the 9.2 acres. It was clearly erroneous to find that this quid pro quo manipulation was an act of charity by the grantor. *USA v. Trans-America Corp.,* 392 F.2d 522, 524 (9th Cir. 1968). I would reverse.