PIERCE PACKING CO., a Montana
Corporation, Appellant,

v.

JOHN MORRELL & CO., a Delaware
Corporation, Appellee.

No. 79–4450.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1980.

Decided Dec. 17, 1980.

Robert P. Ryan, Billings, Mont., for appellant.

William E. Jones, Carlington, Lohn & Robinson, Missoula, Mont., Wm. Bruce Hoff, Jr., Mayer, Brown, Platt, Chicago, Ill., for appellee.

Before KILKENNY and GOODWIN, Circuit Judges, and REAL, District Judge.[*]

KILKENNY, Circuit Judge.

Appellant, a Montana corporation, instituted an action in the district court charging appellee, a Delaware corporation with its principal place of business in Chicago, Illinois, with violations of Sections 1 and 2 of the Sherman Act, of the Robinson–Patman Act, and of a Montana "Unfair Competition" statute prohibiting sales below cost. The case was tried to a jury. A special verdict was used and the jury answered the

---

[*] The Honorable Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

1. The case was submitted to the jury in special verdict form. The jury was asked the following questions, among others, on the attempt to monopolize claim:

"PART I. ATTEMPT TO MONOPOLIZE
(The burden of getting "yes" answers to Questions A, B, and C is on Pierce.)

QUESTION A. Did Morrell have a specific intent to control prices or to destroy competition with respect to all pork products in Montana?

ANSWER: ___Yes___ __X__No

If your answer is "yes," go to Question B. If your answer is "no," go to Part II of this form.

QUESTION B. Did Morrell engage in some predatory conduct directed to accomplishing the unlawful purpose(s) found in answer to Question A above?

ANSWER: ___Yes___ ___No___"

The court instructed the jury, *inter alia,* that: "Now, question A and B are interrelated and, if you find the predatory conduct mentioned in question B, you may, but you are

---

threshold question on each issue in favor of appellee. Appellant alleges that the district court judge committed numerous errors in the instructions and in his ruling on an evidentiary matter. We will address these claims as they relate to the Sherman Act § 2 charge and the state claim.

## NATURE OF THE CASE

### I. *SECTION 2–ATTEMPT TO MONOPOLIZE.*

The relevant product market was "pork and pork products" and the relevant geographic market was Montana. Appellant asserted that appellee attempted to monopolize this market by selling three key products—pork loins, private label bacon and private label frankfurters—below cost. It was stipulated that at the beginning of the alleged damage period, appellant had 50% of the relevant market, while appellee had only 21%, and that at the end of the alleged damage period these percentages were unchanged. The jury found against appellant on the threshold question of whether appellee had a specific intent to control prices or to destroy competition with respect to all pork products in Montana.[1]

---

not required, to infer the specific intent mentioned in question A. For that reason alone, you may find it desireable [sic] to postpone a decision as to the answer to question A until you have discussed the answer to question B.

"Now then, as to question B, you will notice that it is concerned with predatory conduct. The word predatory has in it the connotation of one person preying on another. A predatory act is one designed to injure competition. You might find that such things as drastic price cuts, persistently unprofitable sales or discriminatory sales were evidence of predatory intent. On the other hand, if a sale is economically justified or believed by the seller to be justified by reason of the condition of the seller or of the market conditions, and if it is made for the purpose of profit or the purpose of reducing a loss, the sale is not predatory.

"Pricing is predatory only where a sale or sales is below marginal or average variable cost with the purpose of developing a market position such that it can later raise prices. In any event, the question is one of fact for you to determine."

Appellant alleges that the district court judge committed numerous errors with regard to the attempt to monopolize claim. The most significant involve: (A) the judge's ruling on an evidentiary issue; (B) the instructions dealing with (1) fixed costs, and (2) predatory pricing; and (C) the judge's comments concerning the relationship between margins and prices.

## A. EVIDENTIARY ISSUE.

The allegedly improper evidentiary ruling dealt with evidence and exhibits introduced by appellee which included results from sales of unrelated products.[2] This evidence was introduced to show that appellee's total Montana sales were profitable and that the relevant products were not sold below marginal cost. Appellant contends that the admission of this evidence allowed appellee to distort and misrepresent its costs, prices and pricing policies. In fact, appellant asserts that "The principal appellate issue is whether the admission of this evidence was prejudicial error." The basis for the objection at trial was that the evidence was "immaterial, irrelevant and incompetent" and that the evidence caused "confusion and obfuscation without any reasonable explanation."

■ Appellant's contention is without merit. The admissibility of this type of evidence is within the discretion of the trial judge. The evidence in question was relevant within the terms of FRE 401 which only requires that evidence have "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Emphasis added.] The proffered evidence, in conjunction with the testimony of appellee's witnesses, made the fact of the profit-

ability of appellee's Montana operations, both generally and with respect to pork and the particular pork products involved in this case, more probable than it would have been without the evidence.[3] This fact was clearly of consequence to the determination of the action.

■ Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403. However, a ruling by the trial judge on the admissibility of evidence will not be disturbed unless there was a clear abuse of discretion. *Kaplan v. Intern. Alliance of Theatrical, Etc.*, 525 F.2d 1354, 1362 (CA9 1975). We note the general rule favoring the admission of evidence that has probative value. *See e. g. Young v. Illinois Central Gulf Railroad Co.*, 618 F.2d 332, 337 (CA5 1980). The challenged exhibits clearly had significant probative value. Appellant had a full opportunity to present its case to the trier of fact concerning the inferences to be drawn from and the weight to be accorded the challenged evidence. After a review of the record we cannot say that the admission of this evidence constituted an abuse of discretion.

## B. JURY INSTRUCTIONS.

The allegedly improper instructions concern the computation of fixed costs and the legal standard dealing with predatory pricing. The instructions in question stated that

"Now, I can tell you that, as a matter of Federal law, a sale below total cost is not predatory unless it is also below mar-

---

2. Unrelated products are those not involved in the alleged predatory pricing scheme.

3. Appellee's witnesses explained both the manner in which the challenged exhibits had been prepared and the extent to which the inclusion of the other unrelated products affected the results. Appellee's witnesses testified that appellee's pork sales were generally more profitable than its sales of other products and that,

therefore, any distortion in the exhibits understated the profitability of the three products allegedly involved in a predatory pricing scheme. Because of this testimony the district court judge concluded that the exhibits were indeed relevant to appellee's contention that the evidence of profitability effectively rebutted the claim that it had engaged in predatory pricing.

ginal cost or average variable cost. This is so because a sale at below total cost, but above marginal or average variable cost may result in a profit and rather than a loss to the seller. Marginal cost is the cost of producing one additional unit of goods. Average variable cost may be defined as total cost less that part of the cost which does not vary with output.

"The experts have been in disagreement as to what cost[s] sometimes referred to as *fixed costs* are excluded in determining average variable cost and, the question of what cost might properly be deducted in a given sale is a fact question for you to determine." [Emphasis added.]

## 1. FIXED COSTS.

■ Appellant specifically contends that *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 858 (CA9 1978), *cert. denied* 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122, defined "fixed costs" as a matter of law and that it was error to instruct the jury that the determination of what it is to be included as "fixed costs" was a question of fact. The instructions defined fixed costs, in essence, as those costs which do not vary with output and stated that "the question of what cost may properly be deducted in a given sale is a fact question for you to determine." This was proper. Appellant's contention that *Janich* adopted a rigid definition of those costs which may be considered in ascertaining fixed costs is without foundation. *Janich* does not adopt a rigid definition of fixed costs and the instructions in this case as to fixed costs were consistent with *Janich*. The subsequent case law supports our reading of *Janich*. *See. e. g., William Inglis & Sons v. ITT Cont. Baking*, 461 F.Supp. 410, 419 (N.D. Cal.1978).

## 2. PREDATORY PRICING.

In addition, appellant maintains that the instructions with respect to the "marginal cost rule" were erroneous as a matter of law. Appellant contends that the instructions were too restrictive because they stated that a price could not be predatory unless it was below marginal or average variable cost, and argues that a finding that prices were below marginal or average variable cost is not a prerequisite to a finding of predatory pricing.

■ At the outset, we must determine whether appellant's objection to the predatory pricing instruction was raised in a timely fashion. F.R.Civ.P. 51 states that: "... No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." There was no specific objection to the marginal cost instruction prior to the time the jury retired. Appellant made an objection to the discussion of marginal cost in the instructions on the state claim, but this was surely an insufficient objection to the instruction dealing with the claim under Section 2 of the Sherman Act.

Appellant claims that any failure to object is unimportant because the instructions constituted plain error. This circuit has not followed the plain error doctrine in the civil context. *Hargrave v. Wellman*, 276 F.2d 948, 950 (CA9 1960). This does not mean, however, that appellant is thereby precluded from raising any objection to the predatory pricing instruction. We have stated that "No exception is required when it would not have produced any results in the trial court because 'a solid wall of Circuit authority' then foreclosed the point." *Robinson v. Heilman,* 563 F.2d 1304, 1307 (CA9 1977). This court has recognized that a party should not be penalized for failing to anticipate a change in the controlling law.

We must ascertain, therefore, whether the principle stated in *Robinson* permits appellant to object to the predatory pricing instruction. This necessarily entails a brief discussion of the applicable precedent. We have had numerous opportunities in recent years to consider the law on attempts to monopolize. *E. g., California Computer Products, Inc. v. International Business Machines Corp.*, 613 F.2d 727 (CA9 1979); *Ja-*

*nich, supra; Hanson v. Shell Oil Co.,* 541 F.2d 1352 (CA9 1976), *cert. denied* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). The district courts in this circuit have also discussed the legal standards governing an attempt to monopolize claim. *E. g., In re IBM Peripheral EDP Devices, etc.,* 481 F.Supp. 965 (N.D.Cal.1979) (*Transamerica*); *William Inglis & Sons v. ITT Cont. Baking, supra; ILC Peripherals v. International Business Machines Corp.,* 458 F.Supp. 423 (N.D.Cal.1978).

In *Hanson,* we said that

"To demonstrate predation, Hanson had to show that the prices charged by Shell were such that Shell was foregoing present profits in order to create a market position in which it could charge enough to obtain supranormal profits and recoup its present losses. This could be shown by evidence that Shell was selling its gasoline at below marginal cost or, because marginal cost is often impossible to ascertain, below average variable costs." 541 F.2d at 1358. (Footnote omitted.)

We concluded that a directed verdict on the attempt to monopolize claim was proper because "Hanson's failure to show that Shell's prices were below its marginal or average variable costs was a failure as a matter of law to present a prima facie case under § 2." *Id.* at 1359. (Footnote omitted.)

In *Janich,* we noted that "As implied in *Hanson,* an across–the–board price set at or above marginal cost should not ordinarily form the basis for an antitrust violation." 570 F.2d at 857. (Footnote omitted.) We concluded that

"In summary, we hold that the district court was correct in concluding that *Janich* did not produce sufficient evidence to go to the jury on the question of whether American had engaged in predatory pricing in a product line in either gin or vodka. The evidence concerning the full line of gin and vodka in 1961–62 was deficient as to actual sales and, in addition, the evidence of prices which were below the cost of merchandise allegedly sold for the items in question was inadequate to demonstrate that the prices were below average variable cost. With respect to the evidence concerning prices of half gallons between 1963 and 1968, half gallons do not constitute a product line for the years in question. Thus, without reaching the issue of whether the specified acts could form the basis of a substantial claim of restraint of trade, we conclude that on these facts no reasonable jury could determine that American was engaging in predatory pricing. Consequently, insofar as the attempt to monopolize claim was founded on predatory pricing, a directed verdict against *Janich* was proper." *Id.* at 858–9.

Appellant suggests that the district court judge read these cases too narrowly in instructing the jury that "Pricing is predatory *only* where a sale or sales is below marginal or average variable cost with the purpose of developing a market position such that it can later raise prices." [Emphasis added.] Appellant contends that there are other bases upon which the jury could find predatory pricing, and appears to suggest that it was entitled to instructions on two "exceptions" to the strict rule stated in *Hanson.*

The first "exception" involves predatory pricing in a market with high barriers to entry. Appellant's brief alleges that there are barriers to entry in the product and geographic market involved in the instant case. There is some indication in the case law that a pricing policy could be predatory even if prices were above marginal cost or average variable cost if barriers to entry were extremely high. *Hanson, supra* at 1358 n. 5; *ILC Peripherals v. International Business Machines Corp., supra; Borden, Inc.,* 1978 Trade Reg.Rep., Case No. 21,490 at 21,517–24 (FTC 1978) (Pitofsky concurring.) Assuming, *arguendo,* that there is such an exception to a strict marginal cost rule, appellant is not now entitled to object to the district court's failure to include mention of it in the instructions. The barrier to entry exception was certainly not foreclosed by a solid wall of circuit authori-

ty prior to the time the jury retired. And even if appellant had properly objected to the lack of such an instruction we seriously doubt whether the evidence presented on the issue was sufficient to warrant the instruction.

A second "exception" to the strict cost rule is raised by appellant's contention that there is ample authority to support the view that, in certain situations, prices can be above marginal or average variable cost and still be predatory even in the absence of extremely high barriers to entry. Appellant, however, only cites one case in this circuit which explicitly supports this position—the *Transamerica* case. In that case, Judge Schnacke gave a limited interpretation to *Hanson* and *Janich*. He stated that "These [strict] standards then, are appropriate for judging the pricing conduct of a firm charged with attempting to monopolize where no independent evidence of specific intent and no independent evidence of dangerous probability (relevant market proof) is admitted.... However, less egregious conduct may violate Section 2 if engaged in by a monopolist or by one attempting to monopolize if there is also direct proof of specific intent or direct proof of a dangerous probability of success. *Hanson* and *Janich* are deemed therefore to leave open the appropriate standards to apply to cases with different facts." 481 F.Supp. at 989. (Footnotes omitted.) The language in *Transamerica* does support appellant's position that prices, in certain situations, can be predatory even if above marginal or average variable cost. There is some question as to whether appellant would have been entitled to an instruction on Judge Schnacke's definition of the "appropriate standards" in those cases where there is also direct evidence of specific intent or direct proof of a dangerous probability of success. Pretermitting the question of whether appellant would have been entitled to such an instruction, we must, at the outset, determine whether appellant is in a position to object to the failure to give an instruction based upon Judge Schnacke's view of the law. This can only be true if the rule discussed in *Robinson* is applicable.

We do not believe it is and, therefore, we hold that appellant's failure to object to the predatory pricing instruction precludes any inquiry into the instructions propriety.

*Robinson* would be satisfied if Judge Schnacke's opinion in *Transamerica* represented a change in the controlling law of this circuit. It is clear that this could not be true in this case. An opinion from the Northern District of California, however persuasive, can assuredly not overrule Ninth Circuit precedent. *Even if* Judge Schnacke's opinion purported to change the Ninth Circuit position on predatory pricing, appellant would not have been entitled to an instruction based upon such a "change" in the law. Such a change in precedent can only be made properly by an *in banc* panel of this court or by The Supreme Court of the United States.

The opinion in *Transamerica* simply limited *Hanson* and *Janich* to their precise facts and set forth a more flexible set of rules by which to evaluate predatory pricing if there is also direct proof of specific intent or direct proof of a dangerous probability of success. Clearly, the same opportunity to argue that *Hanson* and *Janich* should be read narrowly was available to appellant at trial. The failure to indicate any disagreement with the predatory pricing rule fashioned by the district court judge on the facts of this case precludes our consideration of its propriety.

## C. *THE RELATIONSHIP BETWEEN MARGINS AND PRICES.*

Much of the evidence adduced at trial concerned appellant's attempt to prove predatory pricing. No direct evidence of appellee's pricing policy was introduced. Appellant attempted to establish predatory pricing by introducing evidence of margin comparisons. A margin is determined by deducting certain standard costs from the selling price. Appellant contended that price variations could be shown by margin fluctuations. Appellee argued that this technique was improper because

"A margin is clearly not a price. Nor, indeed, do margins represent profit, since all relevant costs have not been deducted, and because the margins for any given department within a plant do not reflect the total costs and margins generated in the production of the product sold. Margins are nothing more than a rough tool by which the efficiency of given departments within a meat packing plant is measured."

■ The district court judge, both during trial and in the instructions, cautioned the jury that margins are not prices. For example, the district court judge instructed the jury that

"The antitrust laws refer to prices and not to margins. And the selling margin is not a price. It is a fact question for you to determine from the conflicting evidence, the extent to which, if at all, you are able to determine and compare selling prices from proof of margins."

Appellant argues that the district court judge's statements in this regard were erroneous as a matter of law and that the statements constituted prejudicial comment which deprived appellant of a fair trial. Since the accuracy of this statement does not appear to be in dispute, and because the factual determination to be made was left to the jury, we fail to see how it could possibly have been prejudicial.

## II. *MONTANA "UNFAIR COMPETITION" CLAIM.*

There is little mention of the state claim in appellant's brief and it does not appear that there is any specific assignment of error with respect to that claim. The state statute prohibits sales below cost and the jury specifically found that appellee did not sell pork or pork products in Montana at less than full cost. Appellee contends that

"Once the jury decided that Morrell did not sell below full cost, issues relating to marginal and average variable costs and their relationship to predatory pricing vanished. Sales above full cost are not 'predatory' by any definition of the term. Accordingly, it makes no difference how the District Court defined 'fixed costs,' or whether it failed to tell the jury, as Pierce requested, that pricing below full cost can be predatory in some circumstances."

Appellant's counsel conceded at oral argument that if the jury's finding on the state charge is upheld there could not be a reversible error with respect to the predatory pricing claim. In response to a question that asked whether the finding with respect to the state charge disposed of the other issues in the case, appellant's counsel stated that

"If the evidence on other products, unrelated to the products that were used in this case as the attack on my client were properly admitted ... and the *Janich* case as to fixed costs is to be followed as Judge Smith did it then Mr. Hoff's [appellee's counsel] argument is sound and we lose."

■ As this comment makes clear, the only issues presented by appellant with respect to the state claim are the evidentiary issue and the issue as to fixed costs.[4] Both issues have already been resolved against appellant. Therefore, the jury's finding that appellee did not sell pork and pork products at less than the full cost thereof must stand. And, as appellant conceded, such a finding would necessarily have rendered harmless any error that we might have found with respect to the attempt to monopolize issues.

---

4. Appellant, at oral argument, asserted that we would need to address the propriety of the district court's instructions on "fixed costs" in order to uphold the jury's finding on the state charge. We fail to see the logic of this position. The jury, in answering the question of whether appellee sold pork and pork products at less than the *full* cost thereof, was not required to differentiate between fixed and variable costs. The district court judge, in the instructions, properly defined "cost" under the applicable Montana law, and as the judge stated, "For the purposes of ___ [the state claim], we are not concerned with margin or average variable cost." The jury's finding on the state claim, therefore, is not subject to attack because of any error in the fixed costs instruction. And, in any event, we have determined that that instruction was proper.

## CONCLUSION

The jury's finding on the attempt to monopolize issue must be upheld. The decision of the district court judge to admit the challenged evidence did not constitute an abuse of discretion. The fixed cost instruction was proper. Appellant's failure to make a timely objection to the predatory pricing instruction precludes our consideration of the propriety of that instruction. The district court judge's statements concerning the relationship between margins and prices were not prejudicial. In addition, the jury's finding with respect to the state claim would have rendered harmless any error that we might have found with respect to the Section 2 claim.

We have considered the remaining issues raised by appellant and we have found no basis for reversal.[5] The judgment of the district court must be affirmed.

IT IS SO ORDERED.

---

**5.** We note that the district court judge, in denying appellant's motion for a new trial and for judgment notwithstanding the verdict, commented that

> "At the close of the evidence I was convinced that the proof of damages was insufficient to take the case to the jury.... I believed at the end of the trial that defendants were entitled to a directed verdict on this issue, but since the case had been fully tried, I submitted other fact issues to the jury. The verdicts reached made a decision as to the damage problem unnecessary, but were there to be a new trial, I would be required to rule as a matter of law that the proof of damage was inadequate."

In light of our holding, we express no view on that issue.