**In re Susan Lorene HINKLE,**
**Individually.**

**Bankruptcy No. 80–2–0888–L.**

United States Bankruptcy Court,
D. Maryland.

Feb. 24, 1981.

Allan J. Culver, Jr., Baltimore, Md., for debtor.

Gary R. Greenblatt, Schwarz & Greenblatt, Baltimore, Md., Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER

HARVEY M. LEBOWITZ, Bankruptcy Judge.

In this case the Court is called upon to approve the application of the Debtor, Susan Lorene Hinkle, to reaffirm a debt pursuant to 11 U.S.C. § 524(c)(4). This procedure is new under the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2683 (1978) (codified at 11 U.S.C. §§ 101–1330 (Supp. III 1979) (the "Code"). Under the Bankruptcy Act of 1898, as amended, former Title 11 U.S.C. §§ 1–1103 (the "Act"), an agreement reaffirming a discharged debt was fully enforceable without court approval. As a result, creditors frequently would induce a debtor to reaffirm using duress or other illegal means. 3 *Collier On Bankruptcy* 524–14 (15th ed. 1980). The procedure under the Code is a result of Congressional concern over the potential abuse of a debtor at the hands of a creditor seeking to avoid the consequences of the debtor's discharge in bankruptcy. *See* H.Rep.No.595, 95th Cong., 1st Sess. 365–66 (1977), U.S.Code Cong. & Admin.News 1978, 5787; S.Rep.No.989, 95th Cong., 2nd Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, 5787. It is with this concern in mind that the Court approaches the case at bar.

On May 30, 1980, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code jointly with her husband, listing Metro, Inc., t/a Merchants Factoring Company, a/k/a MFC, as a secured creditor. The Creditor has a security interest in stereo equipment of the Debtor by virtue of a security agreement which contains a provision prohibiting the Debtor from selling or otherwise disposing of the stereo equipment without prior written consent of the Creditor. On October 1, 1980 the Creditor filed a complaint to except this debt from discharge, alleging that the Debtor sold the stereo equipment without consent and that this sale constituted a willful and malicious injury to the Creditor's interest in the property within the meaning of § 523(a)(6) of the Code. The Debtor's answer admitted that she had sold the stereo equipment, but denied that she acted willfully and maliciously. A hearing on the complaint, originally scheduled for November 20, 1980, was continued while the parties attempted to settle the matter. The Creditor dismissed its complaint on December 24, 1980, and at

a discharge hearing held on February 9, 1981, the Debtor applied to the Court for approval of the agreement to reaffirm the debt.

The agreement, dated December 3, 1980, provides that the Debtor pay the sum of $1,000.00 in full settlement of the $1,963.91 balance due on the stereo equipment. The $1,000.00 is to be paid, by an initial installment of $200.00 due on January 10, 1980 [sic] and twelve consecutive monthly installments of $66.67 beginning February 1, 1981 and on the first day of each month thereafter through January 1, 1982. The agreement provides, however, that if the Debtor fails to make any payments when due, the Creditor has the right to apply the total of the payments made to the date of such default against the original balance of $1,963.91 and take whatever action it feels necessary to collect the balance due on the amount of $1,963.91 and not the balance due on the amount of $1,000.00.

■ The agreement reaffirms a consumer debt that is not secured by real property of the Debtor and therefore must be approved by the Court pursuant to § 524(c)(4) in order to be enforceable. Under § 524(c)(4)(A), the Court may approve the agreement if it does not impose an undue hardship on the Debtor or a dependent of the Debtor and is in the best interest of the Debtor. Alternatively, the agreement may be approved under § 524(c)(4)(B) if it is entered into in good faith and is either in settlement of litigation under § 523 or provides for redemption under § 722 of the Code. If the agreement cannot be approved on either ground, the debt will not be reaffirmed and any agreement purporting to reaffirm such debt will be unenforceable.

With regard to § 524(c)(4)(B), there can be no question that the Creditor instituted litigation under § 523 and that the reaffirmation agreement was entered into in settlement of that litigation. The Creditor filed a complaint pursuant to § 523 and the Debtor answered denying certain allegations. A hearing on the complaint was continued while the parties negotiated a settlement, and after the reaffirmation agreement was reached, the Creditor dismissed the complaint. Thus, the only question remaining under § 524(c)(4)(B) is that of good faith.

■ Black's Law Dictionary (5th ed. 1979), citing *Doyle v. Gordon*, 158 N.Y.S.2d 248 (Sup.1954), defines "good faith" as "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." It is clear to the Court that good faith in the context of a reaffirmation of a debt in settlement of § 523 litigation necessarily requires good faith on the part of the creditor in bringing the § 523 action. A creditor's motivation in initiating a § 523 proceeding could be an honest belief that on the facts and the law, the debt may be nondischargeable. On the other hand, a Creditor's action could be initiated without any merit as a mere subterfuge for the purpose of using the § 523 proceedings as a hammer or leverage in obtaining reaffirmation of an otherwise dischargeable debt. A § 523 complaint which on its face has little or no chance of success can have no purpose but that of a bargaining tool. The Court believes that commencement of a § 523 action solely for bargaining purposes does not constitute good faith, but rather shows an intent to gain an improper advantage and any reaffirmation exacted in settlement of such litigation could not have been entered into in good faith.

■ The Court must, therefore, make a preliminary judgment of the likelihood that the Creditor here would succeed on its § 523 action in order to find good faith within the meaning of § 524(c)(4)(B). The facts alleged in the complaint, taken as true, show only that the Debtor sold the stereo equipment in which the Creditor had a security interest in violation of the provision of the security agreement prohibiting sale without the creditor's consent. It is alleged that the Debtor acted willfully and maliciously, but no further facts are alleged to support this conclusion. The Creditor relies solely on the sale without consent to establish the allegations of willfulness and maliciousness on the part of the Debtor.

■ In enacting § 523(a)(6), Congress specifically overruled a series of cases descending from *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), which indicated that a showing of "reckless disregard" of the creditor's rights would support a finding of willful and malicious injury under the Act.[1] H.Rep.No.595, 95th Cong., 1st Sess. 363–65 (1977). Under the Code, a creditor is required to show that the debtor acted deliberately and with an intent to harm the creditor or his property before the debt will be held nondischargeable. *In Re Hodges*, 4 B.R. 513, 2 C.B.C.2d 566 (Bkrtcy., W.D.Va.1980). In *In Re Hodges*, the Bankruptcy Court for the Western District of Virginia, faced with the facts nearly identical to those presented here, held that the mere sale of the subject stereo equipment in violation of a provision of the security agreement covering it, in the absence of either willfulness or maliciousness, would not support a finding that the debt was nondischargeable under § 523(a)(6). The court, citing the legislative history of § 523(a)(6), held *Tinker* and its progeny inapplicable, and relied on what it termed the leading decision in "non-*Tinker* law," *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935). *Davis* held that where the debtor, an automobile dealer, sold an automobile without the consent of the lienholder as required by the chattel mortgage covering the automobile, the debtor was guilty of a conversion, but not necessarily of a willful or malicious conversion within the meaning of § 17 of the Act. Without a showing of "aggravated features," the debt would be discharged. The *Davis* Court did not, however, define "aggravated features" or indicate in any way that it was or was not following a "reckless disregard" standard.

Whether *Davis* can be properly termed "non-*Tinker* law" is debatable. At least one court which cited *Tinker* for the appropriate standard held that a mere technical

conversion did not constitute a willful and malicious injury under § 17 of the Act. *In Re Keating*, 1 B.C.D. 1321, 5 C.B.C. 683 (Bkrtcy., S.D.N.Y.1975). Moreover, a survey of cases decided under § 17 of the Act reveals that the vast majority of courts following either a "reckless" or "knowing disregard" standard based their decisions on the circumstances surrounding the conversion rather than on the act of conversion alone. *See, e. g., In Re McGinnis*, 586 F.2d 162 (10th Cir. 1978); *In Re Lyon*, 3 B.C.D. 970 (W.D.Mo.1977); *In Re LeVario*, 1 B.C.D. 1469 (N.D.Ill., 1975); *In Re Duchesne*, 1 B.C.D. 1096, 5 C.B.C. 151 (D.R.I., 1975). It appears that under the Act, as well as under the Code, a showing that the debtor, without consent, sold goods in violation of a security agreement covering them would not, standing alone, support a finding that the underlying debt was nondischargeable.

The § 523 complaint brought by the Creditor in the case at bar shows a breach of contract and possibly, at most, a technical conversion. There are no allegations of facts to show willfulness or maliciousness on the part of the Debtor. The Creditor relies solely on a sale in violation of the terms of the contract and under such circumstances, the Creditor would have little, if any, chance of success under either the Code or the Act. The Court is, therefore, of the opinion that the § 523 action was instituted for leverage purposes only and not in good faith.

■ Moreover, there is no benefit to the Debtor in reaffirming this debt. The Debtor no longer possesses the stereo equipment and, therefore, continuing payments and accepting personal liability for the original balance should there be a default will be only to her detriment. Because there is little benefit to the Debtor in reaffirming the debt and little likelihood that the Creditor would prevail on its § 523 action, the

---

1. Section 17(a)(2) of the Act made nondischargeable liabilities for "willful and malicious conversion of the property of another" while § 17(a)(8) referred to "willful and malicious injuries to the person or property of another

other than conversion as excepted under" § 17(a)(2). Section 523(a)(6) of the Code covers both. 124 Cong.Rec. H11,113–14 (1978); S17,430–1 (1978).

Court cannot find good faith within the meaning of § 524(c)(4)(B).

Having already determined that the reaffirmation agreement is of no benefit to the Debtor, it cannot be found to be in the best interest of the Debtor pursuant to § 524(c)(4)(A). The Court cannot approve the agreement as required by § 524(c)(4), and it therefore will be unenforceable after the Debtor has been granted a discharge.

Upon the foregoing opinion and for the reasons therein stated, it is this 24th day of February, 1981 by the United States Bankruptcy Court for the District of Maryland

ORDERED that the Debtor's Application to Reaffirm Debt be and hereby is DENIED.