In re Joseph John CECCHINI, Debtor.

IMPULSORA DEL TERRITORIA SUR, S.A., dba Hotel Solmar, Appellant,

v.

Joseph John CECCHINI, Appellee.

In re Peter ROBUSTELLI, Debtor.

IMPULSORA DEL TERRITORIA SUR, S.A., dba Hotel Solmar, Appellant,

v.

Peter ROBUSTELLI, Appellee.

BAP No. EC 82–1566–EAsV.

Bankruptcy Nos. F 81–10688, F 81–01689.

Adv. Nos. F 82–0084, F 82–0085.

United States Bankruptcy Appellate Panels for the Ninth Circuit.

Argued July 15, 1983.

Decided March 28, 1984.

---

Fred G. Meis, Meis & Waite, San Francisco, Cal., for appellant.

M. Nelson Ehmark, Fresno, Cal., for appellees.

Before ELLIOTT, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

Impulsora Del Territoria Sur, S.A., dba Hotel Solmar (plaintiff) appeals from a judgment of the bankruptcy court which held that the debtors' liability to the plaintiff is dischargeable.

We affirm.

## FACTS

Plaintiff operates a hotel in Cabo San Lucas, Baja, Mexico. In April 1973, plaintiff entered into an agreement with an entity known as C.V.R. Investments ("CVR"). CVR was a partnership consisting of Joseph Cecchini, Peter Robustelli, and William van der Meer. The agreement provided that CVR would promote the plaintiff's hotel in the United States by encouraging American tourists to travel to Mexico and stay in the plaintiff's hotel.

As part of the agreement, plaintiff was to reimburse CVR for its expenses in hiring an agent to perform the actual promotional work. CVR hired Frank Tyrell. Mr. Tyrell's duties included receiving checks from American tourists for prepayment of hotel space at the plaintiff's hotel. He would then forward these checks directly to the plaintiff. CVR would advance its own funds to pay Mr. Tyrell for his services. CVR would then periodically bill plaintiff to reimburse CVR for the sums it had advanced.

During the course of the agreement, Joseph Cecchini and Peter Robustelli came to believe that plaintiff was not reimbursing CVR for sums it advanced to Mr. Tyrell. They stopped receiving reimbursement checks from the plaintiff and believed that plaintiff was failing to perform under the

terms of their agreement. In reality, William van der Meer had intercepted plaintiff's timely reimbursement payments and converted them to his own use without the knowledge or consent of either of his partners.

Acting upon his belief that plaintiff was indebted to CVR, Joseph Cecchini directed CVR's controller and financial manager, Gerald Cabral, to instruct Mr. Tyrell to deliver any prepayment checks in his possession to CVR rather than to the plaintiff. Mr. Tyrell delivered about $3200.00 worth of checks to Mr. Cabral who, again at Mr. Cecchini's direction, endorsed and converted the checks payable to the plaintiff.

Plaintiff discovered the missing funds after guests arrived at the hotel insisting that they had pre-paid for accommodations and the hotel had no record of their payment. Plaintiff sued Joseph Cecchini and Peter Robustelli in state court for damages and to recover the funds.

Cecchini and Robustelli were represented in the state court action by attorney Ross L. Sargent. They entered into a stipulated judgment in favor of the plaintiff in July 1977. During the negotiations which culminated in the stipulated judgment, Mr. Sargent represented to plaintiff's counsel that the judgment debt would not be dischargeable in a bankruptcy proceeding because of his client's willful and fraudulent conversion.

In October 1981, Cecchini and Robustelli each filed voluntary bankruptcy petitions. Plaintiff filed an adversary proceeding in each case seeking a determination that the debtors' judgment liability to it was non-dischargeable. The bankruptcy court consolidated the adversary proceedings and held that the debtors' liability to the plaintiff was dischargeable. The court refused to admit testimony concerning Mr. Sargent's statements to plaintiff's counsel regarding the non-dischargeability of the debt. Plaintiff now appeals.

## ISSUES

The plaintiff contends that the trial court erred as follows:

1. The trial court excluded testimony regarding the statements made by Mr. Sargent as to the dischargeability of the debtors' liability to the plaintiff.

2. The trial court incorrectly interpreted the phrase "willful and malicious" as it is used in 11 U.S.C. § 523(a)(6).

3. The trial court found that the plaintiff failed to carry its burden of proving that the debtors' acted with intent to injure the plaintiff.

## ANALYSIS

### 1. *Admissibility of evidence issue*

At the trial on this matter, plaintiff's counsel attempted to testify as to the representations made to him by Mr. Sargent in the state court action. Debtors' current counsel objected to the introduction of this testimony as hearsay, and on that basis, the court refused to admit it. The court also noted that the evidence might be excludable under Rule 403 of the *Federal Rules of Evidence* which states, in pertinent part, that "... evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

After sustaining the objection to the admissibility of the evidence pending further argument, the court allowed the parties to submit written briefs on the issue of admissibility. In its brief, the plaintiff contended that the testimony was not hearsay and directed the court's attention to Rule 801(d) of the *Federal Rules of Evidence* which states, in pertinent part:

"A statement is not hearsay if—

(2) ... (t)he statement is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship ...."

Plaintiff then cited authority to the court for the proposition that an attorney of a party is an agent whose statements may be admissible under this rule.

In its memorandum of decision, the court agreed "for the sake of argument" that the statements offered by plaintiff were not hearsay pursuant to Rule 801(d). It went on to point out that, although not hearsay, the proffered evidence was still inadmissible. The court found that the statements were made in compromise negotiations and were, therefore, inadmissible under Rule 408 of the *Federal Rules of Evidence.* The court also found that, assuming the statements were not rendered inadmissible by Rule 408, they had very little probative value.

Plaintiff now contends that the trial court erred in refusing to admit this testimony under Rule 801(d). Plaintiff admits that Mr. Sargent's statements were made during compromise negotiations, but argues that they are admissible as independent statements of fact.

■ A ruling by a trial judge on admissibility of evidence will not be disturbed on appeal unless there is a clear abuse of discretion. *Pierce Packing Co. v. John Morrell & Co.,* 633 F.2d 1362, 1364 (9th Cir.1980). The abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir. 1976).

■ In the case below, the court found the evidence to be inadmissible, but actually did consider the result if the evidence were admitted. The court found that Mr. Sargent's statements were made several years prior to the enactment of the new Bankruptcy Code. The court then noted that among the effects of the new Code was the creation of a stricter standard of willful and malicious injury sufficient for a finding of nondischargeability. The court then concluded that Mr. Sargent's statements had very little probative value since, although they may have been true when made, they

were not necessarily true under the stricter standard implemented by the new Code.

Thus, although it excluded the testimony under Rule 408, the court found that even if the testimony were admissible under Rule 408 it had very little probative value. Accordingly, we need not decide whether the evidence should have been admitted under Rule 801(d) since the trial court considered the evidence even though it found it to be inadmissible.

In reaching its conclusion, the trial court impliedly characterized Mr. Sargent's statements as merely an opinion of the debtors' former counsel regarding the possible dischargeability of the debt in a potential bankruptcy. Plaintiff might argue that this characterization is incorrect, that Mr. Sargent actually made two separate statements: first, an opinion regarding possible dischargeability and, second, an admission that his clients acted with malice and fraud. It is the second statement which plaintiff seeks to introduce.

The trial court may have incorrectly characterized the testimony. However, any such error was harmless. Mr. Sargent's "admissions" that his clients acted "willfully" and "fraudulently" are really just statements of legal conclusions. It is for a court to determine whether particular conduct can be characterized as willful or fraudulent. This type of characterization by an individual, even an attorney at law, would have very little probative value, too. There was no prejudice to plaintiff by the exclusion of this testimony. The ruling of the trial court was not a clear abuse of discretion.

### 2. The standard of "willful and malicious"

■ The trial court recognized that there is a split of authority on the interpretation of the phrase "willful and malicious" found in 11 U.S.C. § 523(a)(6). Some courts have interpreted this phrase to require an intentional act which causes an injury[1], while other courts have translated it as requiring

---

1. See e.g., *In re DeRosa,* 20 B.R. 307 (1982); *In*   *re McGibborey,* 8 B.R. 987 (1981); *In re Fus-*

an act performed with intent to cause injury[2]. The court below followed the second line of cases and found that "intent to injure the creditor is a necessary element of a case under § 523(a)(6)." Plaintiff now contends that this was error and that the first line of cases present the correct statement of the law. We hold that the trial court adopted the correct interpretation.

11 U.S.C. § 523(a)(6) states, in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

. . . . .

The phrase "willful and malicious", as written by Congress, modifies the word "injury". The Notes of the Committee on the Judiciary of both the Senate and the House, which follow the actual text of the statute, explain: "Under this paragraph, 'willful' means deliberate or intentional." If we substitute "intentional" for "willful" in the statute, we get "intentional and malicious injury", or simply "intentional injury". We conclude that Congress intended that a debtor must have inflicted an intentional injury on another entity or the property of another entity before the provisions of § 523(a)(6) would apply.

The line of reasoning which suggests that "willful and malicious" refers to an intentional act which causes injury, incorrectly reads that phrase as modifying the debtor's act rather than the injury caused by the act. This is not the way the statute is written. If Congress had intended that, the statute would read: "a debt for a willful and malicious *act by the debtor causing* injury to another entity or the property of another entity."

This position is strengthened by those same Committee Notes which go on to state that:

"To the extent *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled."

In *Tinker,* the court held that an intentional act which necessarily causes injury may be said to be willful and malicious so as to come within the exception to dischargeability. Thus, by overruling this reasoning, Congress intended a "reckless injury", or an injury which was caused by an intentional act, to be specifically excluded from the provisions of 11 U.S.C. § 523(a)(6).

### 3. *Plaintiff's burden of proof*

■ We have held that the plaintiff must show that the debtors acted with the intent to injure the plaintiff before the plaintiff can obtain relief under § 523(a)(6). The plaintiff argues that, even upon adoption of this strict standard, it has still carried its burden of proof. The trial court was not persuaded that it had. The court found that the debtors believed that they were owed money by the plaintiff, and that this belief negated any intent to injure the plaintiff. We are required to accept the trial judge's findings unless clearly erroneous. *Bankruptcy Rule 8013.*

"A finding is clearly erroneous when the reviewing court is left with a firm conviction that a mistake has been made."

*Allen v. United States,* 541 F.2d 786, 788 (9th Cir.1976). We are not persuaded that this finding was mistaken.

Additionally, it should be noted that the record does not contain any evidence that Mr. Robustelli participated in or knew of the conversion of the plaintiff's checks. Rather, the record indicates that all of the acts undertaken were at the specific direction of Mr. Cecchini. Mr. Robustelli's liability to the plaintiff cannot be rendered non-dischargeable by imputing Mr. Cecchi-

---

*sell,* 15 B.R. 1016 (1982); *In re Simmons,* 9 B.R. 62 (1981); *In re McCloud,* 7 B.R. 819 (1980).

**2.** See e.g., *In re Finnie,* 10 B.R. 262 (1981); *In re Hinkle,* 9 B.R. 283 (1981); *In re Graham,* 8 B.R. 5 (1980); *In re Hawkins,* 6 B.R. 97 (1980); *In re Hodges,* 4 B.R. 513 (1980).

ni's actions to him. Section 523(a)(6) specifically excepts from discharge "... willful and malicious injury *by the debtor ...*" The statute is silent as to any vicarious actions imputed to the debtor.

We conclude that the lack of evidence in the record, as to Mr. Robustelli, provides another basis for affirming the trial court's finding that the plaintiff failed to meet its burden of proof.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

ELLIOTT, Bankruptcy Judge, dissenting:

I dissent. The trial court stated, "The conversion of negotiable instruments is not a generally accepted collection practice. However, the fact that the debtors believed that they were collecting money which was owed to them by the plaintiff negates any intent to injure plaintiff."

I disagree. Not only is it not a generally accepted collection procedure, it is outright theft. At 37 C.J.S. 61 the editors state that it is not a defense to a charge of forgery that accused had or considered that he had a just claim for the amount which he would realize from a successful perpetration of the forgery; that accused intended to apply the money obtained by the forgery to the payment of a claim which he had against the person whose name he forged, or that accused believed that he had a right to resort to forgery and other illegal acts to collect a debt.

In *State v. Daems,* (1934) 97 Mont. 486, 37 P.2d 322, an attorney, without authority, completed blank checks which had been signed by the executor and intended for payment of creditors' claims, by inserting amounts and his own name. The attorney then negotiated the checks and pocketed the proceeds. The attorney argued that he was owed fees by the estate and that the facts "precluded elements of criminality." *Id.,* 37 P.2d 322 at 326. The Montana Supreme Court held that even if Daems was entitled to the full amount as legal fees that he secured by means of the checks, it was no defense to the charge of forgery.

We are required to accept the trial judge's findings unless clearly erroneous, Bankruptcy Rule 8013.

A finding is clearly erroneous when the reviewing court is left with a firm conviction that a mistake has been made. *Allen v. United States,* (9th Cir.1976), 541 F.2d 786, 788. The trial court's view of Mr. Cecchini's intent was too charitable and clearly erroneous. He intended to convert the Hotel's funds to C.V.R.'s use and he was successful.

The logical extension of the majority's opinion is that if Cecchini traveled to appellant's hotel and obtained payment at the point of a gun, that the debt would be discharged because Cecchini believed he had a right to set off against the hotel's debt to C.V.R. Investments. That would not be a defense to a charge of robbery and it should not be a defense to a claim of non-dischargeability under § 523(a)(6).

Cecchini had a perfectly acceptable remedy at law through suit and garnishment of the hotel receivables. He chose to forge the checks and convert the proceeds. The liability created should not be discharged.