772 F.2d 1493
 13 Collier Bankr.Cas.2d 789, 13 Bankr.Ct.Dec. 1074
 In re Joseph John CECCHINI, Debtor.
IMPULSORA DEL TERRITORIO SUR, S.A., dba Hotel Solmar,
Plaintiff-Appellant,
v.
Joseph John CECCHINI, Defendant-Appellee.
In re Peter ROBUSTELLI, Debtor.
IMPULSORA DEL TERRITORIO SUR, S.A., dba Hotel Solmar,
Plaintiff-Appellant,
v.
Peter ROBUSTELLI, Defendant-Appellee.
 No. 84-2265.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 14, 1985.
Decided Oct. 4, 1985.
 
 Fred G. Meis, James F. Waite, Meis & Waite, San Francisco, Cal., for plaintiff-appellant.
 M. Nelson Enmark, Fresno, Cal., for defendant-appellee.
 Appeal from the United States Bankruptcy Appellate Panels for the Ninth Circuit.
 Before BROWNING, ANDERSON, and NELSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal from a decision of a Bankruptcy Appellate Panel (BAP), 37 B.R. 671 (Bankr. 9th Cir.1984), affirming the decision of the bankruptcy court which held debtor's liability to the plaintiff dischargeable. We note jurisdiction under 28 U.S.C. Sec. 1293(a) and reverse.
 
 FACTS
 
 2
 In April, 1973, plaintiff, Impulsora Del Territorio Sur, entered into an agreement with C.V.R. Investments, a partnership consisting of William Van der Meer and defendants Robustelli and Cecchini. Under this arrangement, C.V.R. agreed to attempt to induce American tourists to travel to Mexico to stay in plaintiff's hotel.
 
 
 3
 As part of this agreement, plaintiff was to reimburse C.V.R. for its expenses in hiring an agent to perform the actual promotional work. C.V.R. hired Frank Tyrell to be the agent. Tyrell received checks from American tourists for prepayment and would then forward the checks directly to the plaintiff. C.V.R. advanced its own funds to pay Tyrell and periodically billed plaintiff to reimburse C.V.R. for the sums it had advanced.
 
 
 4
 Cecchini and Robustelli came to believe that plaintiff was neglecting to reimburse them for sums advanced to Tyrell. Acting on this belief, Cecchini directed that Tyrell be instructed to deliver prepayment checks directly to C.V.R. rather than to the plaintiff.
 
 
 5
 Plaintiff discovered that it was not receiving the prepayment monies and brought suit in state court to recover the funds and damages. Cecchini and Robustelli entered into a stipulated judgment in favor of plaintiff in July, 1977.
 
 
 6
 In October, 1981, Cecchini and Robustelli each filed voluntary bankruptcy petitions. Plaintiff, in an adversary proceeding, sought a determination that the debtors' judgment liability to it was nondischargeable in a bankruptcy proceeding because of the debtors' willful and malicious conduct. The bankruptcy court, consolidating the proceedings, disagreed and held that debtors' liability to plaintiff was dischargeable. The Bankruptcy Appellate Panel affirmed.
 
 DISCUSSION
 
 7
 Title 11 U.S.C. Sec. 523 states, in relevant part:
 
 
 8
 (a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ...
 
 
 9
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 
 
 10
 The trial court correctly recognized the split in authority concerning interpretation of the phrase "willful and malicious" in 11 U.S.C. Sec. 523(a)(6). ER 7 at 8. Some courts have found this phrase to require an intentional act which results in injury, see, e.g., In re DeRosa, 20 B.R. 307 (Bankr.S.D.N.Y.1982); In re McGiboney, 8 B.R. 987 (Bankr.N.D.Ala.1981); In re Fussell, 15 B.R. 1016 (W.D.Va.1982), while others have found it to require an act with intent to cause injury. See, e.g., In re Finnie, 10 B.R. 262 (Bankr.D.Mass.1981; In re Hinkle, 9 B.R. 283 (Bankr.D.Md.1981); In re Graham, 7 B.R. 5 (Bankr.D.Nev.1980). The trial court followed the second, stricter line of authority, holding that intent to injure a creditor is a necessary element of Sec. 523(a)(6) and the BAP agreed.
 
 
 11
 In interpreting statutes, the court's objective is to "ascertain the congressional intent and to give effect to legislative will." Pressley v. Capital Credit & Collection Service, 760 F.2d 922, 924 (9th Cir.1985) (citing Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) ). This intent may be ascertained from the plain language of the statute, or it may be necessary to look to the legislative history for guidance. Pressley, 760 F.2d at id.
 
 
 12
 In the instant matter, the BAP examined the plain language of the statute as well as its legislative history in arriving at its interpretation. 37 B.R. at 675. The phrase "willful and malicious," the panel observed, modifies the word "injury." In the comments following the statute, the panel noted the following explanation: "Under this paragraph, 'willful' means deliberate or intentional." By substituting "intentional" for "willful" in the statute, the panel arrived at "intentional and malicious injury," or simply "intentional injury." Thus, the panel concluded, Congress intended that a debtor must inflict an intentional injury to come within the purview of 11 U.S.C. Sec. 523(a)(6).
 
 
 13
 Plaintiff challenges the BAP's interpretation. Urging application of a looser standard, plaintiff contends that "willful and malicious" refers to an intentional act which causes injury. Under this construction, the creditor would not be required to prove that the debtor acted with intent to injure. Additionally, plaintiff urges, this construction would uphold the bankruptcy policy of discharging the debts of honest debtors. Matter of Esgro, Inc., 645 F.2d 794, 798 (9th Cir.1981). We agree with plaintiff's construction.
 
 
 14
 Plaintiff's construction of "willful and malicious" accords with that of other circuits which have recently addressed the matter. See, e.g., In re Franklin, 726 F.2d 606, 610 (10th Cir.1984) (" 'willful and malicious' requires the intentional doing of an act which leads to injury"); In re Held, 734 F.2d 628, 629-30 (11th Cir.1984) (a finding of recklessness does not resolve the Sec. 523(a)(6) inquiry); Matter of Quezada 718 F.2d 121, 123 (5th Cir.1983) ("willful" means deliberate, a deliberate and intentional act which necessarily leads to injury"); Seven Elves, Inc. v. Eskenazi, 704 F.2d 241, 245 (5th Cir.1983) (without just cause or excuse).
 
 
 15
 This construction is also in accord with that set forth in the leading bankruptcy treatise:
 
 
 16
 In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.
 
 
 17
 3 Collier on Bankruptcy Sec. 523.16 at 523-118 (15th ed. 1983). The "reckless disregard" standard of Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) and its progeny has been explicitly overruled. See, id. at Sec. 523.16(3) and 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320-21.
 
 
 18
 This circuit has recently addressed the "willful and malicious" language of 11 U.S.C. Sec. 523(a)(6). In deciding In re Adams, 761 F.2d 1422 (9th Cir.1985), the court rejected appellant's contention that the requirements of willfulness and malice could be satisfied only by a showing that he specifically intended to injure the appellee. In Adams, the debtor argued that the district court erroneously held nondischargeable his debt resulting from a drunk driving accident. Noting that after the district court's decision the bankruptcy statute had been amended to make such specific debts nondischargeable, the court concluded that "proof that the defendant had knowledge of the probable consequences of drinking and driving ... is not necessary in order to show willfulness and malice." Id. at 1426 & 1427 n. 5. The court went on to explain that "the exception to discharge turns upon the nature of the act which gave rise to the liability," relying on Coen v. Zick, 458 F.2d 326, 329 (9th Cir.1972). In Coen, the court said that nondischargeability "is measured by the nature of the act, i.e., whether it was one which caused willful and malicious injuries. All liabilities resulting therefrom are nondischargeable." Adams, 761 F.2d at 1428 (quoting 458 F.2d at 329). While Adams is not wholly determinative of the question before us, it supports plaintiff's interpretation of the statute.
 
 
 19
 With respect to the specific act of conversion, Collier states that "the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception." 3 Collier on Bankruptcy, Sec. 523.15 at 523-120 (citations omitted). This formulation accords with the Supreme Court's holding in McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), affirming a lower court's determination that debts from conversion are willful and malicious and therefore nondischargeable. In so holding, the Court rejected the requirement that malice toward the individual need be shown, emphasizing that it is the "honest debtor, and not a malicious wrongdoer, that [is] to be discharged. Id. at 142, 37 S.Ct. at 40 (quoting Tinker v. Colwell, 193 U.S. 473, 488, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1906) ).
 
 
 20
 In light of these considerations, we adopt the plaintiff's suggested interpretation of "willful and malicious" in 11 U.S.C. Sec. 523(a)(6). When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is "willful and malicious" even absent proof of a specific intent to injure. We must therefore reverse the BAP's determination in this case because it applied an erroneous legal standard in deciding that defendants' debt was dischargeable.
 
 
 21
 On the record before us, there is ample evidence from which to determine Mr. Cecchini's involvement. There is no question that Cecchini instructed Tyrell to deliver the prepayment checks to C.V.R. rather than delivering them to plaintiff. Thus, Cecchini clearly intended to convert the plaintiff's funds to C.V.R., and he succeeded. Nor is there any doubt that Cecchini was a party to and intended to be bound by the original stipulation concerning the debt at issue here. Therefore, we find that, as to Cecchini, the debt cannot be discharged.
 
 
 22
 However, we are unable, on the record before us, to arrive at a similar conclusion concerning Mr. Robustelli's involvement in this matter. While it is true that Robustelli was bound by the stipulation to pay the debt, the record is devoid of any evidence which would assist us in considering his involvement in the conversion; we must, therefore, remand for further findings as to Mr. Robustelli.
 
 CONCLUSION
 
 23
 For the foregoing reasons, the decision of the BAP is
 
 
 24
 REVERSED and REMANDED for further proceedings.