**In re Mayron GARRETT and Ruth Garrett.**

**Inez GATES, Plaintiff,**

v.

**Mayron GARRETT, Defendant.**

**Bankruptcy No. TS81–30222. Adv. No. 82–3312.**

United States Bankruptcy Court, N.D. Mississippi.

Sept. 8, 1983.

Roy O. Parker, Tupelo, Miss., for creditor.

C. Emmanuel Smith, Tupelo, Miss., for debtor.

## ORDER

T. GLOVER ROBERTS, Bankruptcy Judge.

This cause came on to be heard upon a Complaint to determine the dischargeability of a debt. The Plaintiff alleges in her complaint that she as personal representative of all the heirs at law of James Gates deceased obtained a default judgment in case number 11,845 in the Circuit Court of Pontotoc County, Mississippi against the Defendant/Debtor herein Mayron Garrett. Plaintiff maintains that said judgment is not subject to discharge by virtue of Section 17 of the Bankruptcy Act, the forerunner of 11 U.S.C. §§ 523. Defendant presently incarcerated in Parchman Penitentiary answered and appeared at the hearing on the complaint on June 26, 1983 in Oxford, Mississippi. Testimony was taken in open court from Mayron Garrett and his wife

Ruth. The parties submitted the case on the pleadings, record and uncontradicted testimony of the Debtors. Thus, the Court being fully advised in the premises makes the following findings of fact and conclusions of law.

On April 18, 1982, the Debtors were having a "fish fry" at their home in Pontotoc County when a disturbance erupted over the theft of a saw belonging to Mr. Garrett. Testimony before this Court was that a brother of the deceased, an adopted son of Mayron and Ruth Garrett was suspected of the theft. He was pursued by Mayron Garrett and others in attendance at the "fish fry" throughout the county. The individuals suspected of being involved in the theft were captured and held at gunpoint by Mayron Garrett as he awaited the arrival of law enforcement officials. James Gates, the deceased arrived on the scene and lifted a shot gun from the trunk of a vehicle in the proximity of Mayron Garrett. The uncontradicted testimony of Mr. Garrett was that he stated to the deceased "You did not come down here to kill me, did you?". At this point Gates lifted the shot gun, pointing into the air at Garrett. The Defendant then shot the deceased.

Mayron Garrett was charged with murder. The charge was subsequently reduced and Garrett pleaded guilty to manslaughter. On accepting Defendant's plea of guilty, the Honorable Thomas J. Gardner, III, Circuit Judge of Pontotoc County questioned the Debtor:

Q. Do you understand the charge against you? The reduced charge is that you did wilfully unlawfully, feloniously kill and slay one Scott Gates, a human being?

A. Yes, sir.

Q. Did you, in fact, commit that offense? Did you do that?

A. Yes, sir.

The Defendant was then sentenced to 12 years at the State Penitentiary at Parchman. Thereafter a wrongful death action was filed by Inez Gates, personal representative of all the heirs at law of the deceased, James Gates in the Circuit Court of Pontotoc County. A default judgment was entered against Mayron Garrett in the amount of $100,000.00 for actual and punitive damages. Mayron Garrett and his wife Ruth filed a joint petition in Bankruptcy. Mrs. Gates in turn filed an Objection to Discharge under Section 17 of the Bankruptcy Act (11 U.S.C. § 35), the forerunner of 11 U.S.C. Section 523(a)(6). Debtor answered and a hearing was held in Oxford, Mississippi on June 26, 1983. The uncontradicted testimony of the Debtor was that he acted in self-defense in shooting James Gates.

Conclusions of Law

Plaintiff seeks an exception to discharge under Section 17 of the Bankruptcy Act of 1898 (11 U.S.C. § 35). It had become well-settled by case law under the Act and prior to the enactment of the Bankruptcy Reform Act of 1978 that the proper construction to be placed on Section 17(a)(2) of the former Act was the standard of "reckless disregard". *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902). The new Bankruptcy Code, according to the Congressional language in the Legislative history obviates the reckless or utter disregard standard descending from *Tinker v. Colwell* (supra). Under the Code, a creditor is required to show that the debtor acted deliberately and with the intent to harm the creditor or his property. In *Re Hinkle*, 9 B.R. 283, 7 B.C.D. 349 (Bkrtcy.D.Md.1981).

Thus the applicable Code Section determining the dischargeability of the default judgment is 11 U.S.C. Section 523(a)(6) which provides in pertinent part that

(a) a discharge under . . . this title does not not discharge an individual debtor from any debt.

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The issue before the Court is whether a claim of a creditor should be declared nondischargeable as a willfull and malicious injury, when the uncontradicted testimony of the debtor is that he acted in self-defense.

The State of Mississippi makes clear distinctions between the crimes of murder and manslaughter. In setting forth the elements of each crime, Section 99–7–37 Mississippi Code of 1972 annotated provides "it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully and of his own malice aforethought kill and murder the deceased. And it shall be sufficient in an indictment for manslaughter to charge that the defendant did feloniously kill and slay the deceased...". Thus manslaughter which includes crimes of culpable negligence does not have as a requirement that the element of malice be present. Reviewing the prior proceedings in the case before the Court, we find no mention of malice either in the order reducing the charge from murder to manslaughter or in the questions of the Circuit Judge in accepting the Defendant's guilty plea. The question answered by the Defendant in the affirmative, was whether the killing of Scott Gates was "willful, unlawful and felonious". Those adverbs can not be said to be synonymous with "malicious". The Circuit Judge never questioned the defendant in regards to any malice that might have been present, and thus there was no finding that the actions of the defendant were other than willful within the requirement of nondischargeability 11 U.S.C. § 523.

The wrongful death action initiated by Mrs. Gates alleged that "James Gates died as a direct and proximate result of the Defendant's intentional willful and wrongful act". There is no mention of malice in the Declaration. Furthermore, there was never a finding by the Circuit Judge of malice as there is only a default judgment entered against the Defendant. In that proceeding there was no evidence or testimony offered that the action of the Defendant was willful and malicious, and while the judgment awarded $100,000.00 actual and punitive damages it is silent as to the amount of each, further indicating that the State Court made no specific finding of malice.

In the hearing before this Court on the Complaint to Determine Dischargeabili-ty the Plaintiff introduced the default judgment and then rested. No other oral testimony or documentary evidence was offered. Mr. Garrett took the stand in his own behalf and his testimony, corroborated by his wife was that he acted in self-defense. It has been held that where the judgment was obtained by default and where the hearings held by the Bankruptcy Judge did not indicate willfulness and malice in an assault and battery, the judgment debt was not nondischargeable Re. *Garland* (1975, D.C. Pa.) 401 F.Supp. 608. Having reviewed the pleadings, the Circuit Court records and the testimony before this Court, we cannot find the element of malice that would render this judgment nondischargeable. Therefore the Court finds that said default judgment in Cause No. 11848 in the Circuit Court of Pontotoc County, is hereby discharged.